**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

SUMAYA HAMADMAD, HODA
ELAHINIA, AND JANE DOE,

              PLAINTIFFS,

V.

SHERIFF DALLAS BALDWIN,
FRANKLIN COUNTY SHERIFF'S OFFICE,
IN HIS OFFICIAL CAPACITY ONLY;

OFFICER JANE ROE 1, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY;

OFFICER JANE ROE 2, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY;

OFFICER JOHN ROE, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HIS
INDIVIDUAL CAPACITY ONLY;

OFFICER JANE ROE 3, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY;

OFFICER JANE ROE 4, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY;

OFFICER JANE ROE 5, OFFICER AT
FRANKLIN COUNTY CORRECTIONS
CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY; AND

OFFICER JANE ROE 6, OFFICER AT
FRANKLIN COUNTY CORRECTIONS

CASE NO.

JUDGE

**VERIFIED COMPLAINT FOR
INJUNCTIVE AND DECLARATORY
RELIEF, AND DAMAGES**

**CIVIL RIGHTS ACTION (42 U.S.C. §
1983 AND 42 U.S.C. § 2000CC-2)**

**JURY DEMAND REQUESTED**

CENTER AT JACKSON PIKE, IN HER
INDIVIDUAL CAPACITY ONLY.

DEFENDANTS.

Plaintiffs Sumaya Hamadmad, Hoda Elahinia, and Jane Doe, by and through counsel, CAIR Legal Defense Fund, bring this complaint for declaratory, monetary, and injunctive relief against Defendants, Sheriff Dallas Baldwin, Officers Jane Roe 1-6 and Officer John Roe, for violating their rights under the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Plaintiffs state as follows:

## NATURE OF THIS ACTION

1. On April 24, 2024, Plaintiffs were individually arrested on the Ohio State University ("OSU") campus.

2. OSU officers transferred Plaintiffs into the custody of Defendants at the Franklin County Corrections Center II at Jackson Pike (Jackson Pike").

3. At Jackson Pike, Defendants and their officers forced each Plaintiff to take a booking photograph without her hijab despite their repeated objections based on their religious beliefs.

4. Defendants have preserved the hijab-less images in their records and retained and disseminated those photographs through law enforcement databases and made them available through public records requests.

5. Appearing in public without her hijab or otherwise being viewed without her hijab by men outside of her immediate family severely violates each Plaintiff's sincerely held religious beliefs. By photographing Plaintiffs without their hijabs, Defendants created and continue to maintain a permanent record of that violation.

25118445v1

6.     This action seeks monetary relief under 42 U.S.C. § 1983 for the harms caused by Defendants' blatant disregard of Plaintiffs' religious rights.

7.     This action further seeks declaratory relief against Defendants and injunctions ordering Defendants to (1) remove and destroy all copies of Plaintiffs' uncovered photographs; (2) instruct all agencies or third parties in possession of those photographs to do the same; and (3) change Franklin County policies to accommodate religious head coverings during the booking process.

8.     This action also seeks an award of attorneys' fees, costs, and expenses predicated upon 42 U.S.C. §§ 1988, 2000cc-2(d), and any other relief that this Court deems just and proper.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction under 28 U.S.C. § 1331 and 1343 because this action arises under the United States Constitution and laws of the United States, including 42 U.S.C. § 1983 and RLUIPA, 42 U.S.C. § 2000cc et seq.

10.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

11.     Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this claim occurred in the Southern District of Ohio.

12.     This Court has personal jurisdiction over Defendants because all Defendants reside and conduct business in Franklin County, Ohio.

13.     At all relevant times, Franklin County Sheriff's Office and Franklin County Corrections Center, where the immediate events transpired, are government entities as defined under RLUIPA 42 U.S.C. § 2000cc-5(4).

25118445v1

## PARTIES

14.     Plaintiff Sumaya Hamadmad is a Muslim woman and a resident of Ohio. She is and at all relevant times she was an individual as defined in 42 U.S.C. § 2000cc et seq.

15.     Plaintiff Hoda Elahinia is a Muslim woman and a resident of Ohio. She is and at all relevant times she was an individual as defined in 42 U.S.C. § 2000cc et seq.

16.     Plaintiff Jane Doe is a Muslim woman and a resident of Ohio. She is and at all relevant times she was an individual as defined in 42 U.S.C. § 2000cc et seq.

17.     Defendant Dallas Baldwin is Sheriff at Franklin County and is charged with overseeing the Franklin County Division of Corrections, an agency duly organized under and with all the powers specified and implied by the laws of the State of Ohio and carrying on governmental functions in Franklin County. At all relevant times, Defendant Baldwin was a decision-maker and possessed the authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual officers of Franklin County Division of Corrections. This authority includes the supervision of those individual officers charged with operating and overseeing the search, seizure, detention, and arrests at Franklin County Corrections Centers.

18.     At all relevant times, Defendant Baldwin was the employer and supervisor of Franklin County Officers. Defendant Baldwin's principal office is located at 373 South High Street, Columbus, Ohio 43215. Defendant Baldwin is sued only in his official capacity.

19.     Defendant Officer Jane Roe 1 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state,

25118445v1

and federal laws. Defendant Officer Jane Roe 1 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

20. Defendant Officer Jane Roe 2 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer Jane Roe 2 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

21. Defendant Officer Jane Roe 3 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer Jane Roe 3 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

22. Defendant Officer John Roe is an officer employed by Franklin County. At all relevant times, he was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, and assuring that his actions comply with applicable policies,

25118445v1

rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer John Roe personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in his custody and control. He is, upon information and belief, a resident of this judicial district. He is being sued in his individual capacity, only

23. Defendant Officer Jane Roe 4 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer Jane Roe 4 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

24. Defendant Officer Jane Roe 5 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained individuals, including Plaintiffs, and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer Jane Roe 5 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

25. Defendant Officer Jane Roe 6 is an officer employed by Franklin County. At all relevant times, she was responsible for protecting the custody and supervision of detained

individuals, including Plaintiffs, and assuring that her actions comply with applicable policies, rules, regulations, customs, practices, and procedures of Franklin County in addition to local, state, and federal laws. Defendant Officer Jane Roe 6 personally engaged in discriminatory behavior against Plaintiffs and deprived them of their rights while they were in her custody and control. She is, upon information and belief, a resident of this judicial district. She is being sued in her individual capacity, only.

## **FACTUAL BACKGROUND**

*Plaintiffs' Sincere Religious Beliefs*

1.      Sumaya Hamadmad, Hoda Elahinia, and Jane Doe are Muslim women and residents of Ohio.

2.      Plaintiffs' faith requires them to wear a hijab—a religious headscarf which covers her hair, ears, and neck—when they are in mixed-gender spaces outside their immediate family. Their faith also requires modest dress, including clothing that covers the body.

3.      Appearing in public without a hijab or being photographed without wearing a hijab is a serious breach of the Plaintiffs' faith and a deeply humiliating and defiling experience in conflict with their sincerely held religious beliefs.

4.      Plaintiffs' adherence to this practice is deeply rooted in Islamic texts and teachings. Their decision to wear hijab is a pillar of their religious practice and integral to their identity as Muslim women.

5.      Dr. Hamadmad has worn the hijab for nearly 40 years, Ms. Elahinia for approximately 13 years, and Ms. Doe for 2.5 years. Plaintiffs do not willingly appear without their hijabs in mixed-gender spaces outside their immediate family.

25118445v1

6.      Plaintiffs' government-issued identification depicts them wearing the hijab, including each woman's Ohio driver's license.

*Removal of Plaintiff Hamadmad's Hijab*

7.      On April 25, 2024, Dr. Hamadmad was arrested by the Ohio State University Police Department.

8.      At the time of her arrest, Dr. Hamadmad was wearing modest clothing and hijab in accordance with her religious beliefs. The hijab fully covered her hair and neck.

9.      On campus, OSU police officers processed Dr. Hamadmad and took her identification photograph with her hijab on.

10.     The OSU officers then escorted her to the Franklin County Corrections Center II at Jackson Pike.

11.     When she entered the facility, Franklin County Officers ordered Dr. Hamadmad to remove her jacket, and pants, in view of male officers and detainees, despite her objections based on her religious beliefs. When she refused, multiple officers threatened to remove her hijab by force. Defendant Officer Jane Roe 1 told her that if she did not take off her hijab herself, they would "take it off for her".

12.     Multiple officers pinned Dr. Hamadmad down and forcibly removed her clothing in front of an open door, in full view of male officers outside the room.

13.     After the search concluded, the Officers refused to return her hijab to her and provided her with only a short-sleeved jail uniform, which did not comply with her religious modesty requirements.

14.     In an effort to adhere to her sincere religious beliefs, Dr. Hamadmad attempted to cover herself by placing her head and arms inside her shirt.

25118445v1

15.     Dr. Hamadmad was then taken to the nurse. While she waited, one of the officers who forcibly removed her hijab, Defendant Jane Roe 2, approached her and asked if she wanted her hijab. When Dr. Hamadmad reacted with distress, Officer Roe 2 became angry, ordered her to return to her cell without her hijab, and told her that she "did not deserve nice treatment."

16.     After some time in the cell, officers escorted Dr. Hamadmad to be fingerprinted and identified. Defendant Officer John Roe instructed her to pull down her improvised covering. When she refused, he forcibly pulled it down, told her that she "did not deserve to be identified," and returned her to her cell uncovered.

17.     Throughout her incarceration in the holding cell, Dr. Hamadmad reiterated her request for both a hijab and a prayer mat. The officers ignored or refused all her requests.

18.     Dr. Hamadmad requested assistance identifying the direction of prayer (qiblah). The officers ignored her. Because of this, Dr. Hamadmad was unable to fulfill her prayer obligations.

19.     Hours later, an officer told Dr. Hamadmad that she needed to complete her processing in order to be released. She again requested a head covering of any kind. The officer refused.

20.     Officers then escorted Dr. Hamadmad back to the processing room to take her identification photograph.

21.     Defendants took Dr. Hamadmad's booking photograph with her hair uncovered.

22.     In total, Dr. Hamadmad was deprived of her hijab for approximately ten hours and seen uncovered by several male officers and detainees.

23.     The uncovered booking photograph was temporarily available publicly online.

25118445v1

24.     The photograph remains in Franklin County's databases and is shared with law enforcement agencies, including the OSU Police Department. It is also obtainable through public records requests.

*Removal of Plaintiff Elahinia's Hijab*

25.     On April 25, 2024, Hoda Elahinia was arrested at the Ohio State University by individuals she believes were officers with the OSU Police Department.

26.     At the time of her arrest, Ms. Elahinia was wearing modest clothing and a hijab in accordance with her religious beliefs. The hijab fully covered her hair. During her arrest, her hijab was removed and Ms. Elahinia had to use her Keffiyeh to cover her head.

27.     The OSU officers took Ms. Elahinia to a building on campus to be processed.

28.     OSU Police Officers transported Ms. Elahinia to the Jackson Pike Corrections Center where she was placed in Franklin County custody.

29.     At the facility, a female officer, Defendant Jane Roe 3, ordered Ms. Elahinia to remove her head-covering. Ms. Elahinia stated that she could not do so because wearing her hijab was a religious obligation. The officer rebuffed her and continued to demand that she remove it.

30.     Ms. Elahinia's hijab was ultimately removed in violation of her sincerely held religious beliefs. While uncovered, she remained in full view of male officers and detainees.

31.     Ms. Elahinia made multiple requests to several officers to allow her to cover herself, all of which were denied. Each request was ignored or denied. At one point, while her vitals were being taken by a female employee, she again requested her hijab, and the employee responded, "when you get arrested, you give up certain rights."

32.     Once in her cell, Ms. Elahinia was permitted to replace her hijab briefly before being escorted to take her booking photograph. There, Defendant Jane Roe 4, directed her to

remove her head covering. Ms. Elahinia again explained that she could not remove her hijab without violating her faith. Defendant Jane Roe 4 told Ms. Elahinia that facility policy required removal.

33.     Franklin County Officers forced Ms. Elahinia to remove her hijab and took her booking photograph while she remained uncovered.

34.     Ms. Elahinia was then returned to the holding cell with her hijab, where she and several other Muslim women were held until around six in the morning. During that time, they requested religious accommodations, including additional space and prayer mats to perform their obligatory morning prayer. Franklin County Officers denied these requests.

35.     In total, Ms. Elahinia was deprived of her hijab for approximately an hour and was seen uncovered by several male officers and detainees.

36.     Franklin County maintains Ms. Elahinia's uncovered booking photograph in its databases and shares it with law enforcement facilities in Ohio, including the OSU Police Department. The photograph is further obtainable through public records requests.

*Removal of Plaintiff Doe's Hijab*

37.     On April 25, 2024, Jane Doe was arrested at the Ohio State University by individuals she believes were officers with the OSU Police Department.

38.     At the time of her arrest, Ms. Doe wore modest clothing and hijab, consistent with her religious beliefs. The hijab fully covered her hair and neck.

39.     During her arrest, Ms. Doe's hijab was inadvertently removed by the OSU police officers. Ms. Doe repeatedly requested that it be replaced. Eventually, OSU officers placed a shawl over her head. But the shawl did not fully cover her hair.

40.     OSU officers processed Ms. Doe at an on-campus building. After processing, they transported her to Jackson Pike Correction Center, where she was placed in Franklin County custody.

41.     A female Franklin County officer, Defendant Jane Roe 5, took Ms. Doe into a holding cell and instructed her to remove her head covering. The cell had a large door and window, making her visible to male officers and detainees. Ms. Doe complied and allowed the officers to conduct the search.

42.     After the search, Defendant Jane Roe 5 returned only part of Ms. Doe's hijab, which was insufficient to fully cover her hair. Ms. Doe asked if she could use her hood to cover her hair. Defendant Jane Roe 5 refused, leaving Ms. Doe inadequately covered.

43.     Later, Ms. Doe was escorted by a male officer to the room to take her booking photograph. Defendant Jane Roe 6, the officer taking the photograph, demanded that she remove the shawl she was using to partially cover her hair. Ms. Doe protested based on her religious requirements and questioned why she needed to remove it. But Defendant Roe 6 refused to explain and continued to demand that she remove it.

44.     Understanding that she had no other choice, Ms. Doe ultimately removed her hijab, and Defendants Roe 6 took her booking photograph while she remained uncovered.

45.     Before and after her booking photograph, Ms. Doe and other Muslim detainees requested religious accommodations, including additional space, prayer mats, and a place to perform their obligatory prayers. These requests were initially delayed and ultimately denied by officers.

46.     In total, Ms. Doe was deprived of any covering for approximately one hour and was seen uncovered by several male officers and detainees in violation of her religious beliefs. During

the rest of her hours-long detention by Franklin County, officers repeatedly denied her request for her full hijab, and she remained only partially covered.

47. Franklin County maintains Ms. Doe's uncovered booking photograph in its databases and shares it with other law enforcement agencies, including the OSU Police Department. The photograph is also obtainable through public records requests.

*Defendants Retention of Plaintiffs' Uncovered Images*

48. As a result of Defendants' policies and practices, the Franklin County Sheriff's Office denied the Plaintiffs' requests to maintain their hijabs during their booking at Jackson Pike Corrections Center.

49. As a result of Defendants' policies and practices, the Plaintiffs' violative booking photographs remain in Franklin County's databases.

50. Upon information and belief, these photographs are accessible to state and local law enforcement, as well as other government agencies with whom the Franklin County Sheriff's Office shares data, including the Ohio State University Police Department.

51. Plaintiffs are aware that the photographs of them without their hijabs exist and remain accessible by others. Plaintiffs continue to suffer harm from the retention and potential dissemination of these humiliating and violating photographs.

52. Plaintiffs face harm each day that their violative photographs remain accessible or are in fact viewed by men.

25118445v1

53.     Government-issued identification, including U.S. passports and Ohio driver's licenses, permits individuals to be photographed while wearing religious head coverings so long as the face is visible.[1]

**COUNT I**
**RLUIPA (Religious exercise)**
**(*Against Official Capacity Defendants*)**

54.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

55.     Defendants, through their policies and practices at the Franklin County Corrections Center at Jackson Pike, violated their statutory obligations under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by forcing Plaintiffs to remove their hijabs, or otherwise forcibly removing them, despite their religious objections, and by creating and maintaining photographic records of that violation.

56.     In relevant part, RLUIPA forbids the government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution… unless the government demonstrates that imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc1(a)(1)-(2).

57.     Franklin County's policies and actions forcing the removal of Plaintiffs' head coverings substantially burdened their religious exercise.

58.     Defendants cannot demonstrate that requiring Plaintiffs to remove their hijabs and photographing them uncovered was the least restrictive means of furthering any compelling governmental interest.

---

[1] *See* U.S. Dep't of State, Bureau of Consular Affairs, *How to Apply: Passport Photos*, (last updated December 15, 2025) https://travel.state.gov/content/travel/en/passports/how-apply/photos.html; *see also* Foreign Affairs Manual 8 FAM 402.1-4(c)(3).

59.     At all relevant times, Plaintiffs were confined to a qualifying "institution" –the Franklin County Corrections Center at Jackson Pike—when the events transpired.

60.     The Defendants' officers required Plaintiffs to remove their hijab and to remain uncovered in an open area, in plain view of men, impeding their statutory rights.

61.     Franklin County's more general denial of Plaintiffs' accommodation requests demonstrate that Defendants maintained unconstitutional customs, practices, and policies that deprived Plaintiffs of their religious rights. Defendants could have accommodated Plaintiffs' religious practices without compromising identification or security interests.

62.     Defendants' policies and practices, including the denial of Plaintiffs' requests for religious accommodation, were not the least restrictive means of furthering any compelling governmental interest, and Defendants could have accommodated Plaintiffs' religious practices without compromising legitimate identification or security interests.

63.     Defendants lack a compelling interest in retaining and disseminating these photographs.

64.     Defendants maintained, enforced, and applied, among others, the following policies, practices, and customs that failed to:

   a.  adequately train and supervise officers regarding religious accommodations, including wearing of hijabs;

   b.  adequately train and supervise officers in the appropriate circumstances to remove religious head coverings worn by detained individuals, including only removing the hijab for a private search conducted by female officers;

   c.  establish policies and procedures to enable detained individuals to maintain religious practices, including the hijab;

25118445v1

    d. establish policies and procedures to protect detained individuals from being stripped of their religious rights; and

    e. adequately train and supervise officers from properly preventing male officers and individuals from viewing detained female Muslims who are not wearing the hijab or who are exposed while being physically searched in violation of sincerely held religious beliefs.

65. The policies, customs, and practices described above are evidenced by the treatment of Plaintiffs by Franklin County officers. Defendants' agents forcibly removed Plaintiffs' obligatory religious headscarf despite them requesting a religious accommodation. This conduct reflects the policies, practices, and customs of Defendants.

66. In their official capacity, Defendants had actual or constructive knowledge of the deficient policies, practices, and customs alleged above. They acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, customs, or omissions concerning the constitutional rights of the Plaintiffs.

67. As a direct and proximate result of Defendants' wrongful acts and omissions in their official capacity, Plaintiffs have sustained damages and have and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

### COUNT II
### Violation Of the First Amendment to the United States Constitution
#### (*Against Individual Capacity Defendants*)

68. Plaintiffs repeat and re-allege the foregoing paragraphs as though fully set forth herein.

69. Under the First Amendment, Plaintiffs have the right to freely exercise their religion.

25118445v1

70. 42 U.S.C. § 1983 provides a cause of action against persons acting under color of state law who deprives individuals of rights secured by the United States Constitution.

71. At all relevant times, the individual capacity Defendants were acting under color of state law as officers of Franklin County.

72. The individual capacity defendants deprived Plaintiffs of their right to freely exercise their religion by denying their requests for religious accommodations while in their custody.

73. Together, the individual capacity defendants stripped Plaintiffs of their rights by forcing them to remove their hijabs, and requiring them to remain uncovered in mixed-gender settings. These actions substantially burdened Plaintiffs' religious exercise and were not reasonably related to a legitimate penological interest.

74. As a direct and proximate result of Defendants' actions, violation of 42 U.S.C. § 1983, Plaintiffs have suffered mental anguish, emotional distress, humiliation, embarrassment, and loss of dignity.

75. Plaintiffs are entitled to compensatory, punitive, and nominal damages.

WHEREFORE, Plaintiffs respectfully request this Court to grant compensatory, punitive, and nominal damages together with costs and attorneys' fees to bring this action and all such other relief this Court deems just and equitable.

## Prayer for Relief

WHEREFORE, Plaintiffs request that this Court enter judgment in favor of Plaintiffs and against Defendants on each count in this Complaint, and award the following relief:

1. A preliminary and permanent injunction requiring the official capacity Defendant to:

25118445v1

a. remove and destroy all booking photographs of Plaintiffs taken without their hijabs, as well as any related images or recordings depicting Plaintiffs uncovered while in Frankling County custody;

b. cease retaining, using, or disseminating any photographs of Plaintiffs taken in violation of their religious rights;

c. correct or expunge any records reflecting or incorporating the unlawful photographs of Plaintiffs;

d. implement and enforce policies that accommodate religious head coverings during booking and detention, including ensuring that any necessary removal occurs only in private and in a manner consistent with Plaintiffs' religious beliefs; and

e. provide training to staff regarding religious accommodations, including the handling of religious head coverings during booking and detention.

2. Declaratory judgment that Defendants' policies and practices requiring the removal of Plaintiffs' hijabs and the taking and retention of uncovered booking photographs violate RLUIPA and the First Amendment.

3. An award of nominal, compensatory, and punitive damages against the individual capacity Defendants under 42 U.S.C. § 1983.

4. An award of attorneys' fees, costs, and expenses predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d).

5. Any further relief to which Plaintiffs are entitled or that this Court deems just and proper.

25118445v1

Respectfully submitted,

*/s/ Roula Allouch*
Roula Allouch (0081922)
BRICKER GRAYDON WYATT LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45212
Tel: (513) 629-2805
Fax: (513) 651-3836
Email: rallouch@bricker.com
*Attorney for Plaintiffs*

25118445v1